UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-381-MOC
(1:16-cr-39-MOC-WCM-2)

| | |
|---|---|
| DANNY TERRON RONEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 1). Also pending is the Government's Motion to Dismiss, (Doc. No. 7), and Petitioner's *pro se* "Request for Correction of Document 5," (Doc. No. 9), that was docketed as a Motion.

## I. BACKGROUND

Petitioner was arrested in connection with the robbery of a Dollar General Store on April 22, 2016. (1:16-cr-39 ("CR") Doc. No. 3). Petitioner was charged in the Second Superseding Indictment with:[1] Count One, Hobbs Act robbery and aiding and abetting the same (18 U.S.C. § 1951, 2); and Count Two, discharging a firearm during a crime of violence, *i.e.*, the Hobbs Act robbery charged in Count One, and aiding and abetting the same (18 U.S.C. § 924(c)(1)(A)(iii)). (1:16-cr-39 (CR Doc. No. 206).

Counsel filed an unopposed Motion to have Petitioner forensically evaluated on August 1,

---

[1] Petitioner was charged in the original Indictment with Hobbs Act robbery, discharging a firearm in violation of § 924(c), and possession of a firearm by a convicted felon in violation of 922(g)(1). (CR Doc. No. 1). In the Superseding Indictment, Petitioner was charged with conspiracy to defraud the United States, Hobbs Act robbery, and discharging a firearm in violation of § 924(c). (CR Doc. No. 69). The Second Superseding Indictment was filed on June 7, 2017. (CR Doc. No. 206).

1

2016. (CR Doc. No. 48). A Magistrate Judge conducted a competency hearing on January 6, 2017, and found him incompetent to proceed. (CR Doc. No. 109). Petitioner was hospitalized to attain the capacity for trial to proceed. (CR Doc. No. 122). Multiple continuances were granted to ensure Petitioner's competency and to allow for trial preparation. (CR Doc. Nos. 164, 217, 235, 240, 249, 260, 268, 280, 285, 294, 298, 302, 306, 309, 312). A Magistrate Judge found Petitioner competent to stand trial on September 23, 2019, and Petitioner was arraigned. (CR Doc. Nos. 322, 317).

The parties filed a Plea Agreement and Factual Basis on September 24, 2019. (CR Doc. No. 315, 316). Petitioner agreed to plead guilty to Count Two and admitted that he is guilty of that offense, and the Government agreed to dismiss Count One. (CR Doc. No. 316). In the written Plea Agreement, Petitioner acknowledged that Count Two is punishable by a minimum of 10 years' imprisonment, up to life. (CR Doc. No. 316 at 2). The Plea Agreement states that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the sentence that Petitioner might receive was a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. (CR Doc. No. 316 at 2).

The parties agreed to jointly recommend that applicable guideline sentence is the minimum term of imprisonment required by statute pursuant to § 2K2.4(b). (CR Doc. No. 316 at 2). The Plea Agreement provides that Petitioner stipulated to the existence of a factual basis to support his guilty plea as required by Rule 11(b)(3), that he read and understood the written Factual Basis that was filed with the Plea Agreement, and that the Factual Basis may be used by the Court and Probation Office to determine the applicable advisory guideline range or the appropriate sentence. (CR Doc. No. 316 at 2). The Petitioner agreed that the Factual Basis does not necessarily

represent all conduct relevant to sentencing and that the United States may submit a Statement of Relevant Conduct to the Probation Office, and may present additional relevant facts to the Court. (CR Doc. No. 316 at 3). The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty including an express waiver of Petitioner's right to contest the conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 316 at 3). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (Doc. No. 316 at 4).

The written Factual Basis provides, in relevant part:

> On the evening of January 13, 2016, **the defendant entered a Dollar General Store … in Buncombe County and announced that he was committing a robbery. He fired a pistol once into the ceiling**, and then pointed that firearm at the employees as well as at several customers. **He stole a little over $2,300 in currency and rolls of coins, wrapped in a yellow Dollar General shopping bag, from the store. He also stole $25 in cash from one of the customers, by pointing the pistol at her, and $20 in cash from a male customer**.
>
> He left the store and got into an automobile driven by Danielle Jones and occupied also by his cousin. Shortly after they drove away from the store, a Buncombe County Sheriff's Deputy, driving a marked patrol car, spotted them and began to follow them, activating his emergency lights. When Ms. Jones finally stopped the car, the defendant fled on foot but was apprehended a few minutes later. Officers recovered the yellow Dollar General bag, still containing the stolen cash and rolls of coins, from the car.
>
> The Dollar General store was engaged in interstate commerce, and the robbery during which the defendant used the pistol affected interstate commerce

(CR Doc. No. 315 at 1-2) (paragraph numbers omitted; emphasis added).

On September 27, 2019, a United States Magistrate Judge conducted a plea hearing pursuant to Rule 11 at which Petitioner was represented by appointed counsel. (CR Doc. No. 319)

3

(Acceptance); see also (CR Doc. No. 320) (Sealed Addendum to Acceptance). Petitioner stated, under oath, that he: wanted the Court to accept his guilty plea; understood the charges, his sentencing exposure, and the consequences of pleading guilty; understood the rights he was waiving by pleading guilty; and was pleading guilty because he is guilty of Count Two. (CR Doc. No. 319 at 1-4). Petitioner further stated that he understood and agreed with the Plea Agreement including the appellate and post-conviction waivers. (CR Doc. No. 319 at 4). He stated that he read the Factual Basis, understood it, and agreed with it. (CR Doc. No. 319 at 4). Petitioner stated that nobody threated, intimidated, or forced him to plead guilty, or made any promises of leniency or a light sentence to induce him to plead guilty. (CR Doc. No. 319 at 4). Petitioner confirmed that he had enough time to discuss any possible defense with his attorney and was satisfied with counsel's services. (CR Doc. No. 319 at 5).

The Presentence Investigation Report (PSR) calculated the offense level as the term of imprisonment required by statute pursuant to § 2K2.4(b). (CR Doc. No. 327 at ¶ 29). Petitioner had three criminal history points and a criminal history category of II. (CR Doc. No. 327 at ¶ 35). Petitioner "accept[ed] responsibility for [his] offense of conviction as described in the factual basis." (CR Doc. No. 327 at ¶ 26). The guideline imprisonment range was 10 years' imprisonment as required by § 924(c). (CR Doc. No. 327 at ¶ 65).

In a Judgment entered on December 20, 2019, Petitioner was adjudicated guilty of Count Two and sentenced to 120 months' imprisonment followed by five years of supervised release. (CR Doc. No. 329). Petitioner did not file a direct appeal.

Petitioner filed a § 2255 Motion to Vacate in the instant case on December 9, 2020. (Doc.

No. 1).² The § 2255 Motion to Vacate was severely deficient and, on December 21, 2020, the Court ordered Petitioner to amend. (Doc. No. 2). Petitioner filed the Amended § 2255 Motion to Vacate on January 19, 2021. (Doc. No. 4). Petitioner appears to argue:³ (1) counsel and the Government had Petitioner committed for evaluation and treatment even though knew nothing was wrong with him;⁴ (2) the Court lacked jurisdiction over the criminal action due to charging defects; (3) Petitioner was not given the opportunity to present a defense; and (4) Petitioner was not given the opportunity to retain counsel. Petitioner seeks vacatur of his conviction and immediate release.

On February 19, 2021, the Court issued an Order requiring the Government to respond to Petitioner's allegations within 60 days. (Doc. No. 5). In response, the Government filed a Motion to Dismiss, (Doc. No. 7), arguing that Petitioner's claims are waived, procedurally barred, and meritless.

The Court informed Petitioner of his right to respond to the Motion to Dismiss, (Doc. No. 8), and Petitioner filed a Response, (Doc. No. 10). Petitioner reiterates his arguments and contends that the Motion to Dismiss should be denied.⁵ (Doc. No. 10).

---

² Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

³ Petitioner's claims have been restated and renumbered. Any subclaim or argument that is not specifically addressed in this Order has been considered and rejected.

⁴ Petitioner further alleges that counsel and the Government hired inmates to gang rape and attempt to kill him. Claims about conditions of confinement are not cognizable on § 2255 review and are dismissed. See generally Preiser v. Rodriguez, 411 U.S. 475 (1973) (habeas and a civil rights suit pursuant to 42 U.S.C. § 1983 are mutually exclusive); Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (recognizing the federal equivalent of a civil rights action pursuant to § 1983). These allegations must be presented, if at all, in a separate lawsuit.

⁵ Petitioner also raises a number of new claims in the Response. For instance, he contends that: he has won several appeals and has been released by the Government on at least three occasions, and that he has been "kidnapped and re-incarcerated" each time; his conviction of violating § 924(c) is improper because he was charged on an aiding and abetting theory but no co-Defendant was convicted of that offense; the charges against him are the product of a conspiracy and he is actually innocent; Petitioner fathered children with several female employees at the Federal Medical Center where he was treated for incompetency, including the clinical psychologist who evaluated Petitioner for competency in 2018; and the attorney representing the Government in this § 2255 proceeding is posing as an Assistant United States Attorney. These claims do not relate back to the Amended § 2255 Motion to Vacate and are

Petitioner also filed a "Request for Correction of Document 5," (Doc. No. 9), in which he appears to argue that the Court's February 19 Order requiring the Government to respond to Petitioner's arguments within 60 days does not accord with the Rules governing § 2255 proceedings, that Petitioner should be granted a video hearing, and that he should be immediately discharged from custody because "the Court knows that the Judgment was rendered without jurisdiction…" and "the United States Attorney should only agree with everything Petitioner states…." (Doc. No. 9 at 2-3).

II. **SECTION 2255 STANDARD OF REVIEW**

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United

---

not properly before the Court. They are also frivolous, fantastical, and merit no serious discussion. In his Response, Petitioner also reiterates the allegations that he is being raped and beaten by other inmates, and he further alleges that he being deprived of various constitutional rights. As already discussed in note 4, *supra*, such claims are not cognizable in this § 2255 proceeding and they are dismissed.

States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

**(1)** <u>**Waiver**</u>

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." <u>United States v. Willis</u>, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Blackledge v. Perry</u>, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." <u>Id.</u>

Further, an appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. <u>United States v. Marin</u>, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. <u>See</u> <u>United States v. Lemaster</u>, 403 F.3d 216, 200 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." <u>United States v. Johnson</u>, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." <u>Marin</u>, 961 F.2d at 496 (emphasis added).

In the instant case, a Magistrate Judge conducted a thorough Rule 11 colloquy and

concluded that Petitioner was pleading guilty knowingly and voluntarily with a full understanding of his plea's consequences, including the appellate and post-conviction waivers. Any suggestion that the plea was not knowingly and voluntarily entered is rejected.[6] Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Petitioner's plea was freely and voluntarily entered and thus waived any non-jurisdictional errors that preceded it. Petitioner presently raises several matters in this regard, and they will be addressed in turn. First, Petitioner contends that counsel and the Government had him evaluated and committed for mental health treatment even though they knew "nothing was never mentally wrong with movant in the first place." (Doc. No. 4 at 4). Petitioner does not allege that he was incompetent at the time he pleaded guilty or that anything regarding the competency proceedings rendered his plea involuntary or constituted a jurisdictional defect. Accordingly, his knowing and voluntary guilty plea waived any alleged error in the competency proceedings that preceded it. See United States v. Bluso, 519 F.2d 473, 474 ("A guilty plea is normally understood as a lid on the box, whatever is in it, not a platform from which to explore further possibilities.").

Second, Petitioner contends that "[t]he Court lost jurisdiction by amending, omitting, altering, and modifying indictments." (Doc. No. 4 at 5). This claim fails because "defects in an

---

[6] Petitioner argues for the first time in his Response that the guilty plea was involuntary because, *inter alia*, the "fake" competency proceedings were designed to prolong his incarceration and force him to plead guilty. See (Doc. No. 10 at 24). Even if this claim were properly before the Court, it would be rejected because it is conclusively refuted by the record, including Petitioner's statements under oath at the Rule 11 hearing.

indictment do not deprive a court of its power to adjudicate a case." United States v. Cotton, 535 U.S. 625, 630 (2002) (noting that the right to a grand jury can be waived). The alleged indictment errors were non-jurisdictional and, therefore, were waived by Petitioner's knowing and voluntary guilty plea. United States v. Little, 455 F. App'x 362 (4th Cir. 2011) (district court properly denied defendant's motion to dismiss the indictment underlying his federal convictions because "[a] defective indictment will not deprive a district court of jurisdiction in a criminal case … and [defendant's] valid guilty plea waived all prior non-jurisdictional defects.") (citations omitted).

Third, Petitioner contends that he was denied the opportunity to present a defense case, including witnesses and his own testimony, after he was found competent to proceed to trial. This claim is conclusively refuted by Petitioner's admission under oath that he is guilty of Count Two and the knowing and voluntary waiver of his rights to call witnesses, present a defense, and testify on his own behalf. (CR Doc. No. 319 at 1-4). His present nonsensical and unsupported protestations of innocence and assertions of the existence of exculpatory evidence are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221.

Fourth, Petitioner contends that he was not allowed to retain counsel after he was found competent to stand trial. He states that he "wanted to hire his own private attorney to represent him but he Court refused him an opportunity." (Doc. No. 4 at 4). This claim is conclusively refuted by his statements, under oath, at the Rule 11 hearing that he was satisfied with counsel's services. Accordingly, the instant claim to the contrary is rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221.

Petitioner's knowing and voluntary plea waived all of the foregoing allegations of non-jurisdictional defects. No error, such as sentencing beyond the statutory maximum, occurred that would warrant setting aside the waiver. See Section (3), *infra*. Petitioner's claims were therefore

waived by his knowing and voluntary guilty plea and will be dismissed with prejudice.

**(2)** **Procedural Default**

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). With regards to cause and prejudice, a petitioner must demonstrate: (1) the existence of cause for a procedural default that turns on something external to the defense; and (2) actual prejudice resulting from the errors of which he complains. United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010). Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray, 477 U.S. at 496.

Petitioner did not prosecute a direct appeal and, accordingly, failed to exhaust his present claims for § 2255 relief. Although the Petitioner contends that he has an alibi and did not rob the Dollar General Store because he "owned the store that was robbed," he has failed to come forward with clear and convincing evidence of his actual innocence. (Doc. No. 4 at 4). Nor can Petitioner

demonstrate cause and prejudice to excuse his procedural default of these claims because, even if he could somehow establish cause, he cannot demonstrate prejudice because his claims are meritless. See Section (3), *infra*. Therefore, Petitioner's claims are procedurally defaulted from § 2255 review and will be dismissed.

**(3)** **Merits**

Moreover, each of Petitioner's claims lacks merit, and therefore, they would be denied even if they were not waived by the guilty plea and procedurally defaulted from § 2255 review.

First, Petitioner's contention that counsel and the Government had him evaluated and treated for mental incompetency even though they knew nothing was wrong with him, is conclusively refuted by the record. Petitioner's counsel moved for a psychological evaluation pursuant to 18 U.S.C. § 4241(a) based upon a reasonable belief that Petitioner may be suffering from a mental disease which rendered him unable to understand the nature and consequences of the proceedings or assist properly in his defense, to which the Government did not object. (CR Doc. No. 40). Petitioner was then mentally evaluated over the course of six weeks by a forensic psychologist who concluded that Petitioner was incompetent to proceed to trial. (CR Doc. No. 109). A Magistrate Judge considered the psychologist's report, the § 4241(d) criteria, and arguments of counsel at a competency hearing, and concluded that Petitioner was not competent to proceed at that time. (CR Doc. No. 122). Petitioner's present speculative, conclusory, and unsupported allegation that the competency evaluation and mental health treatment were unnecessary is conclusively refuted by the record and is denied.

Second, Petitioner contends that charging errors occurred that deprived the Court of jurisdiction. He appears to allege that: the Grand Jury was presented evidence that did not prove his guilt; different allegations and Defendants appeared in the First Superseding and Second

11

Superseding Indictments; the Indictment and Superseding Indictments were not signed by a foreperson; Petitioner's name appears in all capital letters; and Petitioner was charged with two conspiracies in violation of double jeopardy.

An indictment must contain the elements of the offense charged, fairly inform the defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense. United States v. Daniels, 973 F.2d 272, 274 (4th Cir. 1992); Fed. R. Crim. P. 7(c). The Second Superseding Indictment in the instant case was sufficient because it cited the relevant law and described the date and conduct at issue. See (CR Doc. No. 206). Each of Petitioner's specific allegations of charging error is meritless. Petitioner appears to complain about the quality or accuracy of the evidence that the Grand Jury considered. However, this allegation fails to identify any prejudicial error. See Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988) ("the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment;" prejudice is only shown if "it is established that the violation substantially influenced the grand jury's decision to indict, or there is grave doubt that the decision to indict was free from the substantial influence of" misconduct); Costello v. United States, 350 U.S. 359, 363-64 (1956) ("It would run counter to the whole history of the grand jury institution" to permit an indictment to be challenged "on the ground that there was inadequate or incompetent evidence before the grand jury."). The Petitioner's allegation that it was improper for the Government to file Superseding Indictments also fails. Nothing about the Grand Jury's consideration of different evidence, or amendment of the charges and Defendants in the Superseding Indictments, was irregular or prejudicial. See generally Fed. R. Crim. P. 7(e) ("Unless an additional or different offense is charged or a substantial right of the defendant is prejudiced, the court may permit an information to be amended at any time before the verdict or finding.").

Petitioner has failed to explain how the Government's filing of Superseding Indictments that amended the co-Defendants and charges – all of which occurred while Petitioner was incompetent to proceed – was improper or could have harassed or prejudiced him in any way. United States v. Davis, 854 F.3d 1276 (11th Cir. 2017) ("A prosecutor may seek a superseding indictment at any time prior to a trial on the merits, … so long as the purpose is not to harass the defendant.") (quotation omitted); United States v. Begay, 602 F.3d 1150, 1154 (10th Cir. 2010) ("[a]bsent prejudice to the defendant, a superseding indictment may be filed at any time before trial….") (quotation omitted). Petitioner's suggestion that he was not properly charged because his name appeared in all capital letters in the Indictment and Superseding Indictments is frivolous. United States v. Gonzalez, 222 F. App'x 238, 243 (4th Cir. 1997) (noting the absurdity of defendants' argument that they were not properly identified in the incitement because all capital letters was used). His contention that the Second Superseding Indictment was not signed by the foreperson is mistaken, as the signature was merely redacted for the Court's public records, and further the absence of a signature would not have been a fatal error. See (CR Doc. No. 206-1); Fed. R. Crim. P. 6(e)(6) (addressing the sealing of grand jury records); see also Hobby v. United States, 468 U.S. 339, 345 (1984) ("the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment"). Petitioner's contention that he was charged with two conspiracies in violation of double jeopardy is nonsensical and refuted by the record. Petitioner was charged in the Second Superseding Indictment with one count of Hobbs Act robbery and one count of discharging a firearm in violation of § 924(c) during the Hobbs Act robbery. (CR Doc. No. 206). These are two distinct offenses and, in any event, Petitioner pleaded guilty only to the § 924(c) offense. No double jeopardy error occurred. Petitioner has failed to identify any charging error that prejudiced him in any way, therefore, this claim will be denied.

Third, Petitioner contends that he was not allowed to present a defense by calling witnesses or testifying on his own behalf. As a preliminary matter, this claim is too vague and conclusory to support relief insofar as Petitioner has failed to come forward with any exculpatory evidence that he would have presented had he been given the opportunity to do so. Moreover, his claim that he had a meritorious defense is conclusively refuted by Petitioner's admission that he violated § 924(c) during the robbery of the Dollar General Store as set forth in the Factual Basis. See (CR Doc. No. 315). There is no reasonable probability that a different outcome would have resulted in the criminal case had he testified and presented evidence. Therefore, this claim will be denied.

Fourth, Petitioner contends that he was prepared to retain counsel after he regained competence, but that he was prevented from doing so. The record reflects that Petitioner expressed dissatisfaction with counsel prior to the competency hearing, which prompted appointed counsel to file Motions for Inquiry. (CR Doc. No. 45) (Aug. 8, 2016 hearing where counsel noted that she and Petitioner had reached an impasse, and where Petitioner expressed his dissatisfaction); (CR Doc. No. 111, 112) (Motions for Inquiry). After conducting a hearing and considering the relevant factors, including Petitioner's incompetence, the Magistrate Judge found that no good reason to appoint substitute counsel existed at that time. (CR Doc. No. 111, 112) (Motions for Inquiry of Counsel); (CR Doc. No. 124) (Order denying Motions For Inquiry into status of counsel). After Petitioner gained competence to proceed, he did not request the substitution of counsel and stated his satisfaction with counsel's services under oath at the Rule 11 hearing. See (CR Doc. No. 319). Petitioner's unsupported contention that he was prepared to retain counsel after he regained competence, but that he was prevented from doing so, is conclusively refuted by the record and will be denied.

Liberally construing the allegations, it appears that Petitioner may be attempting to suggest

that counsel was ineffective for failing to raise the foregoing issues before the Court. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). To satisfy Strickland's prejudice prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated in part on other grounds*, 218 F.3d 310 (4th Cir. 2000).

Counsel cannot be deemed ineffective for failing to raise these meritless claims and, even if counsel had done so, there is no reasonable probability that they would have changed the proceedings in any way favorable to Petitioner. See generally Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); Lockhart v. Fretwell, 506 U.S. 364, 374 (1993) (a defendant is not prejudiced if his counsel fails to make an objection that is

"wholly meritless under current governing law"). Therefore, any suggestion that counsel was ineffective with regards to the foregoing allegations of error, these claims are meritless and will be denied.

Finally, Petitioner's "Request for Correction of Document 5" is construed as a Motion for Immediate Release. Petitioner has failed to identify any meritorious grounds for release, an evidentiary hearing is not warranted, and the Court complied with the applicable law and procedural rules in these § 2255 proceedings. Accordingly, the Motion will be denied.

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss and deny Petitioner's Amended § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED that:**

1. Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 4), is **DISMISSED** and **DENIED**.

2. The Government's Motion to Dismiss, (Doc. No. 7), is **GRANTED**.

3. Petitioner's "Request for Correction of Document 5," (Doc. No. 9), is construed as a Motion for Immediate Release and is **DENIED**.

4. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive

procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

5. The Clerk is instructed to terminate this action.

Signed: June 18, 2021

Max O. Cogburn Jr
United States District Judge